1  Mike Arias, Esq. (CSB #115385)
   Mikael H. Stahle, Esq. (CSB #182599)
2  H. Scott Leviant, Esq. (CSB #200834)
   Jason E. Barsanti, Esq. (CSB #235807)
3  **ARIAS OZZELLO & GIGNAC LLP**
   6701 Center Drive West, Suite 1400
4  Los Angeles, California 90045-1558
   (310) 670-1600
5  (310) 670-1231 (Fax)
   marias@aogllp.com
6
7  Attorneys for Plaintiffs

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                    **WESTERN DIVISION**

11

12  JAMES STEVENS, et al.,                | Case No. CV 05-1988 MMM (SHx)

13          Plaintiffs,                   | Hon. Margaret M. Morrow
                                          | Courtroom 780
14      vs.

15  SAFEWAY INC., et al.,                 | **CLASS ACTION**

16          Defendants.                   | **APPLICATION FOR:**

17                                        |   (1)  **AWARD OF ATTORNEYS'**
                                          |        **FEES AND REIMBURSE-**
18                                        |        **MENT OF EXPENSES; and**

19                                        |   (2)  **INCENTIVE AWARDS FOR**
                                          |        **CLASS REPRESENTATIVES**
20
                                          | **MEMORANDUM OF POINTS AND**
21                                        | **AUTHORITIES.**

22                                        | [Filed concurrently with Declarations
                                          | of Mike Arias, James Stevens and
23                                        | Herman Cortez]

24                                        | Date:    February 25, 2008
                                          | Time:    10:00 a.m.
25                                        | Ctrm:    780

26  ///

27  ///

28  ///

Page 1

1    TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF

2    RECORD:

3        PLEASE TAKE NOTICE that on February 25, 2008, at 10:00 a.m., or as

4    soon thereafter as the matter may be heard, in Courtroom 780 of the United

5    States District Court, Central District of California, located in the Royal

6    Building at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs

7    James Stevens and Herman Cortez ("Plaintiffs") will move the Court for an

8    Order:

9        1.    Approving attorneys' fees to be paid to Arias, Ozzello & Gignac,

10   LLP for its representation of Plaintiffs and reimbursing Arias, Ozzello &

11   Gignac, LLP  for the reasonable expenses incurred in connection with this

12   action in the aggregate amount of $1,500,000.00; and

13       2.    Approving "incentive" awards to the named Class Representative

14   Plaintiffs in the amounts of twenty thousand dollars ($20,000) for James

15   Stevens, and ten thousand dollars ($10,000) for Herman Cortez.

16       This Application is based upon this Notice, the Memorandum of Points

17   and Authorities submitted herewith, the Declaration of Mike Arias, Esq. filed

18   herewith, the Declaration of James Stevens filed herewith, the declaration of

19   Herman Cortez filed herewith, the pleadings and records on file in this matter,

20   and such additional oral argument and documentary evidence as may be

21   presented and considered at the time of the hearing on this Application.

22                                     Respectfully submitted,

23   Dated:  January 30, 2008          ARIAS OZZELLO & GIGNAC LLP

24

25                           By:_____

26                                     MIKE ARIAS
                                       MIKAEL H. STAHLE
27                                     H. SCOTT LEVIANT
                                       JASON E. BARSANTI
28                                     Attorneys for Class Plaintiffs
                                       and Class Counsel

*(left margin, vertical)* ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

ARIAS OZZELLO & GIGNAC LLP

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.   INTRODUCTION .......................................................................... 1

II.  SUMMARY OF THE PROPOSED SETTLEMENT ................................. 4

    A.   The Settlement Fund ............................................................... 4

    B.   Allocation of the Settlement Fund .............................................. 4

        1.   Incentive Awards to the Named Plaintiffs ........................ 4

        2.   Formula for Participation in the Settlement Fund ........................ 5

    C.   Attorneys' Fees and Expenses of Plaintiffs' Counsel ............................ 5

III. ARGUMENT ............................................................................... 6

    A.   The District Court Must Determine Whether the Amount and
        the Mode of Payment of Attorneys' Fees are Fair and Proper .............. 6

    B.   Attorneys' Fees May Be Calculated Either As A Percentage Of
        The Fund Or By The Lodestar Method .......................................... 7

    C.   The Attorneys' Fees Requested Are Reasonable Under Either
        the Percentage Method Or The Lodestar Method ................................ 9

        1.   The Attorneys' Fee Requested By Class Counsel Are Fair
            And Reasonable Under The Lodestar Method ................................ 9

        2.   The Attorneys' Fees Requested By Class Counsel Are
            Reasonable When Measured Against The Ninth Circuit
            Benchmark ............................................................... 12

    D.   The Reasonable And Necessary Costs Incurred By Class
        Counsel Should Be Reimbursed .................................................. 14

    E.   The Incentive Awards Requested Are Reasonable And Should
        Be Awarded To The Named Plaintiffs .......................................... 15

        1.   The Court Has The Discretion To Grant Incentive Awards
            In This Action ........................................................... 16

1

    2.    The Class Representatives Should Be Granted Incentive
Awards By This Court ......................................................................... 17

    3.    The Federal District Courts Routinely Grant Incentive
Awards ................................................................................................. 19

    4.    Incentive Awards Promote An Important Public Policy .............. 20

    5.    The Incentive Awards Requested Are In Line With Those
Granted In Other Cases .................................................................... 21

IV.  CONCLUSION ....................................................................................... 22

ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

1

# TABLE OF AUTHORITIES

2

CASES

3 *$12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1992)............................... 8

4 *Cook v. Niedert* (7th Cir. 1998)142 F.3d 1004, 1016 ....................................... 17

5 *Enterprise Energy v. Columbia Gas Transmission*

6     (S.D. Ohio 1991) 137 F.R.D. 240, 250-51 ............................................ 21

7 *Gaskill v. Boula* (E.D. Ill. 1995) 1995 US Dist. LEXIS 18576 ......................... 20

8 *Hanlon v. Chrysler Corp.*,150 F.3d 1011, 1029 (9th Cir. 1998)....................... 7, 8

9 *Hensley v. Eckerhart* (1983) 461 U.S. 424, 437............................................ 6, 7

10 *Hughes v. Microsoft Corp.* (W.D. Wash. 2001) 2001 US Dist. LEXIS 5976 ...............14, 20

11 *Huguley v. General Motors Corp.*

12     (E.D. Mich. 1989) 128 F.R.D. 81, 85, aff'd (6th Cir. 1991) 925 F.2d 1464 ............ 20

13 *In re Businessland Securities Litigation*, 1991 W.L. 427887, *2-3 (N.D. Cal. 1991)......... 14

14 *In re Domestic Air Transp. Antitrust Litigation* (N.D. Ga. 1993) 148 F.R.D. 297, 357-35821

15 *In Re Dun & Bradstreet Credit Services Customer Litigation*

16     (S.D. Ohio 1990) 130 F.R.D. 366, 376 ............................................ 20

17 *In re Dun & Bradstreet*, 130 F.R.D. at 373-374............................................ 21

18 *In re Employee Benefit Plan Sec. Litig.*

19     (D. Minn.1993) 1993 U.S. LEXIS 21226, Fed. Sec. L. Rep. (CCH) ¶ 97699 ......... 21

20 *In re Mego Fin. Corp. Sec. Litig.* (9th Cir. 2000) 213 F.3d 454, 463 ............................... 21

21 *In re Nucorp Energy, Inc.*, 764 F.2d 655, 661 (9th Cir. 1985) ............................. 14

22 *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ......................... 13

23 *In re SmithKline Beckman Corp. Sec. Litig.* (E.D. Pa. 1990) 751 F.Supp. 525, 535........... 21

24 *Ingram v. The Coca-Cola Co.* (N.D. Ga. 2001) 200 F.R.D. 685, 694 ............................... 19

25 *Jordan v. Multnomah Co.*, 815 F.2d 1258, 1262 n. 5 (9th Cir.1986)................................... 8

26 *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 71 (9th Cir.1975).................................... 8, 9

27 *Mego Fin'l Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 463 (9th Cir. 2000) ........................ 16

28 *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)................ 8, 12

**ARIAS OZZELLO & GIGNAC LLP**

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

*Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ..................................................... 15

*Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) ...... 8

*Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir.2001) .................................................... 7, 9

*Staton v. Boeing,* 327 F.3d 938, 963 (9th Cir. 2003)..................................................... 6, 16

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) .............................. 11

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal.1995) ............. 16, 21

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ............................... 14

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ...................... 7, 8, 12, 13

*Whitford v. First Nationwide Bank* (W.D. Ky. 1992) 147 F.R.D. 135, 138 ........................ 21

*Williams v. Kaiser Sand and Gravel Co.*

(N.D. Cal. 1995) 1995 US Dist. LEXIS 14262 .................................................. 20, 21

*Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999) ...................... 6

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 1

Cal. Lab. Code § 226.7, 512 ............................................................................................... 1

Cal. Lab. Code § 510, -2-1194, 1198................................................................................. 1

Cal. Lab. Code § 98.6.......................................................................................................... 1

Title 29 U.S.C. § 216........................................................................................................... 6

Title 29 U.S.C. § 1140......................................................................................................... 1

ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On March 18, 2005, Plaintiff James Stevens filed a proposed class action complaint in the United States District Court for the Central District of California entitled *"James Stevens, on behalf of himself and all others similarly situated v. Safeway Inc., The Vons Companies, Inc., Pak N' Save, Inc., Dominick's Supermarkets, Inc., Randall's Food Markets, Inc., Carr-Gottstein Foods Co., Genuardi's Family Markets LP, Pavilions, Tom Thumb, and Does 1 through 10, inclusive,* Case No. CV 05-1988 MMM (SHx). This action alleged claims for (1) Failure to Pay Overtime Compensation [Fair Labor Standards Act, 29 U.S.C. § 206, 207]; (2) Failure to Maintain Records to Determine Benefits Due [Employee Retirement Income Security Act, 29 U.S.C. § 1059]; (3) Interference with Protected Rights [Employee Retirement Income Security Act, 29 U.S.C. § 1140]; (4) Failure to Pay Overtime Compensation [Cal. Lab. Code § 510, -2-1194, 1198]; (5) Failure to Provide Meal and Rest Break Periods [Cal. Lab. Code § 226.7, 512]; (6) Retaliation for Asserting Wage Claims [Cal. Lab. Code § 98.6]; and (7) Unfair Competition [Cal. Bus. & Prof. Code § 17200, *et seq.*]. This action named two putative subclasses, defined as "(a) all current and former hourly paid employees of Safeway employed in any of the States except California who worked time off-the-clock for which they were not compensated; (b) all current and former hourly paid employees of Safeway employed in California who worked time off-the-clock for which they were not compensated."

On September 19, 2005, the Court granted Defendants' motion to dismiss Stevens' Second Claim for Relief under ERISA from the Federal Court Action and to strike Stevens' claim for unpaid regular (as opposed to overtime) wages under the FLSA.

ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

ARIAS OZZELLO & GIGNAC LLP

1  On December 27, 2005, this Court grated Plaintiffs leave to file a First
2  Amended Complaint which amended certain allegations, including the class
3  definitions, and which added Herman Cortez as a named plaintiff. (Stevens and
4  Cortez are hereinafter sometimes collectively referred to as the "Named
5  Plaintiffs.")
6  On February 24, 2006, the Court conditionally certified a collective opt-in
7  class, for purposes of the FLSA claim only, defined as follows: "*All current and
8  former hourly paid, store-level employees of Safeway, Vons, and Pak 'N Save
9  stores in California who, at any time in the three years prior to the filing of this
10  action, worked time off the clock for which they were not compensated.*" The
11  Court set May 15, 2006 as the date by which potential class members were
12  required to opt in to the FLSA action.[1]
13  On March 3, 2006, Defendants provided the names of approximately
14  175,000 current and former employees who fell within the FLSA class definition.
15  The Court approved a form of FLSA Notice, which included identification of
16  Poorman-Douglas as the administrator selected by Plaintiffs' counsel to handle the
17  notice and opt-in process, and extended the opt-in deadline to June 19, 2006. As
18  of the deadline, 5,162 individuals had filed opt-in consent forms. On November
19  20, 2006, the Court denied Plaintiffs' motion to allow the joinder of class
20  members whose consent forms were filed after the June 19, 2006 deadline.
21  On December 14, 2006, the Court entered an order summarily adjudicating
22  (in Defendants' favor) Plaintiffs' Second Claim for Relief under ERISA, their
23  Third Claim for Relief for overtime premium compensation under California law,
24  their Fourth Claim for Relief for regular pay under California law, their First

26  [1] On July 7, 2006, based upon the parties' stipulation, the Court entered an
27  order dismissing those allegations within the First Amended Complaint
28  purporting to state a class action under Rule 23 of the Federal Rules of Civil
Procedure.

Page 2

ARIAS OZZELLO & GIGNAC LLP

1  Claim for Relief under the FLSA against all named defendants other than

2  Safeway, Vons, and Pak 'N Save, and their Fifth, Sixth, and Seventh Claims for

3  Relief (all claims other than under the FLSA) against all named defendants other

4  than Vons.

5  　　　During the course of this case, the parties conducted extensive discovery

6  regarding liability, policies and procedures, industrial engineering, and alleged

7  damages. The parties conducted more than 50 depositions.  Plaintiffs served nine

8  sets of document requests and seven sets of interrogatories, seeking company-

9  wide, division-wide, and class-wide information.  Defendants served document

10  requests and interrogatories on both the Named Plaintiffs and on the opt-in

11  members of the conditionally certified FLSA class.  Plaintiffs' counsel and

12  Defendants' counsel conducted extensive discovery and investigation into

13  Plaintiffs' claims and Defendants' defenses to assess relative risks, potential

14  liability and damages, and to provide both Plaintiffs and Defendants with detailed

15  responsive information relevant to their respective claims and defenses.  While the

16  parties strived to resolve disputes without judicial involvement, motions were

17  brought on numerous occasions before U.S. Magistrate Judge Stephen J. Hillman

18  concerning a wide range of discovery issues.

19  　　　On November 28, 2006, and again on May 10, 2007, the parties engaged in

20  mediation in San Francisco, California with mediator Mark S. Rudy, Esq. of

21  Rudy, Exelrod & Zieff, LLP.  After several subsequent phone calls between

22  counsel for the parties and with the help of Mediator Mark S. Rudy, Esq., the

23  mediation was ultimately successful.  The parties documented the essential terms

24  of their settlement in a series of emails between counsel dated May 14 through

25  May 21, 2007.  Thus, the parties' settlement, as detailed herein, is the result of

26  lengthy, intensive, and arms-length negotiations concerning all of the claims and

27  defenses presented, as well as the risks and expenses of continued litigation.

28

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

1   On August 15, 2007, the parties filed a Stipulation of Settlement and Joint

2   Request for Preliminary Approval of Settlement ("Stipulation of Settlement"),

3   which the Court denied without prejudice on November 5, 2007 with

4   instructions to the parties to revise the terms of the Stipulation of Settlement

5   concerning the process by which Eligible Plaintiffs could object to the

6   proposed settlement.  On November 27, 2007, the Parties filed a revised

7   version of the Stipulation of Settlement, which the Court approved on

8   December 11, 2007.

9       In its December 11, 2007 order preliminarily approving the proposed

10  settlement, the Court set the Final Approval Hearing for February 25, 2008, at

11  10:00 a.m.  Any objections to the settlement must be postmarked by January 8,

12  2008 and are to be filed with the Court on or before February 1, 2008.  No

13  objections to the proposed settlement have been received.

**II.**

**SUMMARY OF THE PROPOSED SETTLEMENT**

**A.    The Settlement Fund**

The Parties have agreed to resolve this case with Defendants paying to the
Eligible Plaintiffs the gross sum of two million one hundred thousand dollars
($2,100,000), less applicable state and federal withholdings, which shall be
allocated to the settlement of the claims of the Eligible Plaintiffs (the "Settlement
Fund").  The "Eligible Plaintiffs" are the Named Plaintiffs, together with the 5,162
opt-in members of the conditionally-certified FLSA class who worked for
Defendants on or after June 19, 2003.

**B.    Allocation of the Settlement Fund**

**1.    Incentive Awards to the Named Plaintiffs**

The settlement provides that, subject to the approval of the Court, twenty
thousand dollars ($20,000) shall be allocated to Plaintiff Stevens and ten

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

ARIAS OZZELLO & GIGNAC LLP

1  thousand dollars ($10,000) shall be allocated to Plaintiff Cortez as incentive

2  awards for acting as Named Plaintiffs <u>and</u> in consideration of their release of

3  any and all state law claims alleged on their behalf in the First Amended

4  Complaint.

5        **2.    Formula for Participation in the Settlement Fund**

6        The balance of the Settlement Fund, after subtracting the incentive

7  awards noted above shall be allocated as follows: (i) each Eligible Plaintiff

8  shall receive $100.00; and (ii) of the remaining funds, each Eligible Plaintiff

9  shall receive a pro-rata share based on the number of workweeks after June 18,

10  2003 in which he or she worked thirty (30) hours or more for any one of the

11  three Defendants.

12        The Stipulation of Settlement provides that Plaintiffs' counsel shall

13  calculate the individual settlement allocations applicable to each of the

14  Eligible Plaintiffs. Prior to the mailing of the Class Notice by the Notice

15  Administrator, Plaintiffs' counsel provided these allocations to the Notice

16  Administrator. These allocations range from $100 to approximately $2,350,

17  depending on how many workweeks of thirty (30) hours or more the Eligible

18  Plaintiff in question worked after June 18, 2003. The allocations were made

19  based on payroll data provided by Defendants' counsel to Plaintiffs' counsel.

20  **C.    Attorneys' Fees and Expenses of Plaintiffs' Counsel**

21        Plaintiffs and Defendants have agreed that Plaintiffs' counsel are entitled to

22  recover their attorneys' fees and costs not to exceed the aggregate amount of one

23  million five hundred thousand dollars ($1,500,000). As of the date of the filing of

24  this Application, Plaintiffs' counsel has incurred costs in excess of six hundred

25  and sixteen thousand dollars ($616,000). Arias Decl., ¶ 13. This amount

26  includes the cost of notice and notice administration pursuant to this Court's

27  conditional certification Order. Arias Decl., ¶¶ 13-14. Additionally, as of the

28  date of the filing of the Stipulation of Settlement, Plaintiffs' counsel has expended

ARIAS OZZELLO & GIGNAC LLP

1    more than 4,200 hours of time on this case, equating to a "Lodestar" in excess of

2    one million two hundred and fifty thousand dollars ($1,250,000). Arias Decl., ¶¶

3    7-9.

4        It is important to note that the payment of Plaintiffs' counsel's fees and

5    costs was negotiated separately from the class recovery and will not reduce

6    class recovery whatsoever.

## III.

## ARGUMENT

**A.    The District Court Must Determine Whether the Amount and the Mode of Payment of Attorneys' Fees are Fair and Proper**

11       In the Ninth Circuit, "a district court must carefully assess the

12   reasonableness of a fee amount spelled out in a class action settlement

13   agreement." *Staton v. Boeing,* 327 F.3d 938, 963 (9th Cir. 2003). As the

14   Ninth Circuit Court of Appeals stated in *Zucker v. Occidental Petroleum*

15   *Corp.,* 192 F.3d 1323, 1328 (9th Cir. 1999): "[i]n a class action, whether the

16   attorneys' fees come from a common fund or are otherwise paid, the district

17   court must exercise its inherent authority to assure that the amount and mode

18   of payment of attorneys' fees are fair and appropriate."

19       The United States Supreme Court has indicated that consensual resolution of

20   attorneys' fee issues is the ideal toward which litigants should strive. In *Hensley v.*

21   *Eckerhart* (1983) 461 U.S. 424, 437, the United States Supreme Court stated: "A

22   request for attorney's fees should not result in a second major litigation. Ideally, of

23   course, litigants will settle the amount of a fee."

24       In a Fair Labor Standards Act action, the code expressly provides for the

25   imposition of attorneys' fees. Title 29 U.S.C. § 216 provides in pertinent part:

26   "[t]he court in such action shall, in addition to any judgment awarded to the

27   plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the

28   defendant, and costs of the action." Therefore, the parties have followed the

ARIAS OZZELLO & GIGNAC LLP

Page 6

1  Supreme Court's recommended approach by negotiating the attorneys' fees

2  and costs to be paid under the code and by memorializing their negotiated

3  agreement the concurrently filed Settlement Agreement.

4  **B.    Attorneys' Fees May Be Calculated Either As A Percentage Of The**

5  **Fund Or By The Lodestar Method**

6  In calculating attorneys' fees in civil class actions, "the district court has

7  discretion to use either a percentage or lodestar method" in order to calculate

8  the attorneys' fees to be awarded to counsel. *Hanlon v. Chrysler Corp.*,150

9  F.3d 1011, 1029 (9th Cir. 1998); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d

10  1043, 1047 (9th Cir. 2002) ("Under Ninth Circuit law, the district court has

11  discretion in common fund cases to choose either the percentage-of-the-fund or

12  the lodestar method.").

13  "The most useful starting point for determining the amount of a

14  reasonable fee is [1] the number of hours reasonably expended on the litigation

15  [2] multiplied by a reasonable hourly rate." *Sorenson v. Mink*, 239 F.3d 1140,

16  1145 (9th Cir.2001) (relying upon *Hensley*, 461 U.S. at 433). The resulting

17  figure is known as the "Lodestar."

18  To determine what qualifies as reasonable attorneys' fees, the Ninth

19  Circuit has adopted the twelve factors noted in *Hensley* (the "Lodestar

20  factors") as "guidelines [and] as appropriate factors to be considered in the

21  balancing process required in a determination of reasonable attorney's fees:"

22  (1)    the time and labor required,

23  (2)    the novelty and difficulty of the questions involved,

24  (3)    the skill requisite to perform the legal service properly,

25  (4)    the preclusion of other employment by the attorney due to acceptance

26  of the case,

27  (5)    the customary fee,

28  (6)    whether the fee is fixed or contingent,

ARIAS OZZELLO & GIGNAC LLP

Page 7

(7)    time limitations imposed by the client or the circumstances,

(8)    the amount involved and the results obtained,

(9)    the experience, reputation, and ability of the attorneys,

(10)   the "undesirability" of the case,

(11)   the nature and length of the professional relationship with the client, and

(12)   awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 71 (9th Cir.1975); *see also $12,248 U.S. Currency*, 957 F.2d 1513, 1520 (9th Cir. 1992) (applying the twelve factors outlined in *Kerr* to the EAJA).

"[Although] the lodestar determination has emerged as the predominate element of the analysis....the court [can still] make adjustments to the lodestar figure based on the 'riskiness' of the lawsuit and the quality of the attorney's work." *Jordan v. Multnomah Co.*, 815 F.2d 1258, 1262 n. 5 (9th Cir.1986).

Under the percentage-of-the-fund method of awarding attorneys' fees, the district court simply awards counsel a percentage of the value of the common fund. *Hanlon,* 150 F.3d at 1029. In the Ninth Circuit, the figure of 25% has been established as the "benchmark" for attorneys' fees which are awarded under the percentage-of-the-fund method. *Vizcaino,* 290 F.3d at 1047-1048; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (noting that, in *Paul, Johnson*, the Ninth Circuit "established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases").

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND FOR INCENTIVE AWARDS

ARIAS OZZELLO & GIGNAC LLP

**ARIAS OZZELLO & GIGNAC LLP**

**C.   The Attorneys' Fees Requested Are Reasonable Under Either the Percentage Method Or The Lodestar Method**

**1.   The Attorneys' Fee Requested By Class Counsel Are Fair And Reasonable Under The Lodestar Method**

In order to calculate the Lodestar, the district court should multiply the reasonable hours expended on the litigation by a reasonable hourly rate. *See Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). The Court may then assess whether the fees requested are reasonable by applying the twelve Lodestar Factors as "guidelines [and] as appropriate factors to be considered in the balancing process required in a determination of reasonable attorney's fees." *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 71 (9th Cir.1975).

In this case, an analysis of the relevant factors demonstrates that Plaintiffs' fee request is reasonable under the Lodestar method. First, a significant amount of time and labor were required from Plaintiffs' counsel in this case. The parties took more than 50 depositions, in locations from San Francisco to Orange County. In addition, the parties engaged in considerable discovery, exchanging more than one hundred thousand documents, all of which required review. Furthermore, in order to obtain these documents and other discovery responses, Plaintiffs' counsel was required to meet and confer with defense counsel on virtually every set of discovery, most of which required a motion before the Magistrate judge. Arias Decl., ¶ 16. Also, due to the breadth of the case, which involved more than 5,000 opt-in plaintiffs, Plaintiffs' counsel was required to conduct client interviews and administration on a massive scale to maintain a satisfactory level of organization.

As a result of the time required and difficulties encountered in pursuing this case, Plaintiffs' counsel devoted more than 4,200 hours time to this case. When valued at Plaintiffs' counsel's normal hourly rates, that time equates to a Lodestar in excess of $1,250,000 at a very reasonable "blended" or "average"

1   rate of less than $300 per hour.  Arias Decl. ¶ 8.  However, Plaintiffs' counsel
2   is requesting less than their Lodestar.  The $884,000 requested represents just
3   under 71% of Plaintiffs' counsel's Lodestar.  For these reasons, the time spent
4   by Plaintiffs' counsel is quite reasonable, and the first Lodestar factor militates
5   heavily in favor of approving the fees requested.

6        Second, this case presented several novel and difficult legal challenges.
7   In addition to the difficulty in maintaining a collective action with more than
8   5,000 plaintiffs and arranging for and defending more than 30 plaintiff
9   depositions, this case required Plaintiffs' counsel to confront numerous
10  complicated legal issues.  For example, the case presented difficulty in proving
11  liability on a state-wide scale.  This required Plaintiffs' counsel to pursue
12  theories of liability based on Defendants' organizational and labor budgeting
13  systems – systems that Plaintiffs' counsel was required to learn from the
14  ground up in a very short time frame.  Plaintiffs' counsel also had to formulate
15  a system whereby Plaintiffs could prove damages for more than 5,000
16  plaintiffs over a diverse geographical area.  To accomplish this, Plaintiffs'
17  counsel devised a system of statistical sampling and employed several experts
18  in the field of statistics and surveying in order to be able to prove class-wide
19  damages at mediation and trial.  For these reasons, the second Lodestar factor
20  weighs heavily in favor of approving the fees requested.

21       Third, this case required significant skill to perform the necessary legal
22  services competently.  As noted above, this case involved difficult legal issues
23  and presented significant organizational challenges.  Plaintiffs' counsel proved
24  themselves up to the task in every way.  Plaintiffs' counsel spent considerable
25  time developing their theories of certification, liability, and damages - often
26  employing novel solutions to solve these legal and logistical problems.
27  Plaintiffs' counsel also expended substantial effort in obtaining the discovery
28  necessary to advance these legal theories and invested significant time in

ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

1    managing the case despite the challenges presented by such a large class.

2    Finally, Plaintiffs' counsel was able to present their theories on these issues to

3    the defense, the court, and the mediator in such a way as to produce a very

4    advantageous result for the class. For these reasons, the third and ninth

5    Lodestar factors weigh heavily in favor of approving the fees requested.

6         Fourth, Class Counsel undertook the risk of handling this action on a

7    fully contingent basis. Class Counsel have expended significant time on this

8    matter without any compensation and have advanced the heavy costs necessary

9    to pursue this action to its successful conclusion. Arias Decl., ¶ 6. Plainly, in

10   the absence of their commitment to this case, Class Counsel could have

11   devoted their efforts to one or more other class action matters. The financial

12   burdens undertaken by Class Counsel warrant strong consideration. *See*

13   *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993)

14   (considering counsel's bearing the financial burdens of the case). For these

15   reasons, the fourth, sixth, and seventh Lodestar factors weigh heavily in favor

16   of approving the fees requested.

17        Finally, the result obtained is highly advantageous to the class and

18   weighs in favor of approving the fees requested. Despite the significant

19   obstacles to recovery presented in this case, including but not limited to

20   obtaining certification, proving liability through testimony and expert analysis

21   of Defendants' budgetary process, and proving damages on a class-wide basis

22   through statistical sampling and survey data, Plaintiffs' counsel has negotiated

23   a settlement which provides a substantial benefit to the class. Through expert

24   statistical and survey techniques, Plaintiffs' counsel estimated the maximum

25   likely value of this case at approximately $3,500,000. Thus, the gross

26   recovery in this case represents more than 100% of the recoverable damages,

27   while the net recovery (setting aside the attorneys' fees and costs) is still

28   almost 60% of the likely recovered damages.

ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

1    At the time of settlement, Plaintiffs faced numerous challenges in

2    obtaining **any recovery at all** for the class. First, Plaintiffs were confronted

3    with Defendants' motion to decertify the collective action. Second, Plaintiffs

4    were faced with the challenge of obtaining a finding of liability based on

5    Defendants' complex budgetary system. Third, Plaintiffs ultimately would

6    have been required to prove damages on a class-wide basis.

7    Although Plaintiffs' counsel remains confident that they would have

8    prevailed on each of these issues, experienced counsel cannot brazenly assume

9    success. On the contrary, all litigation comes with risk. Plaintiffs' counsel

10    recognized this risk, along with the potential appeals that would follow a

11    judgment at the trial level, and took these factors into account when

12    negotiating the final settlement amount. Based on the risks posed by the

13    unresolved issues in this case, and factoring in the time required for trial and

14    appeals, counsel felt strongly that the result obtained – approximately 60% of

15    the maximum likely net recovery - was an excellent settlement for the class.

16    For these reasons, the eighth Lodestar factor weighs heavily in favor of

17    approving the fees requested.

18    **2.    The Attorneys' Fees Requested By Class Counsel Are Reasonable**

19    **When Measured Against The Ninth Circuit Benchmark**

20    The Ninth Circuit's 25% benchmark for attorneys' fees which are

21    awarded under the percentage-of-the-fund method may be adjusted upward or

22    downward by a district court in order to account for "unusual circumstances"

23    involved in a particular case. *Paul, Johnson*, 886 F.2d at 272. If there is an

24    adjustment from the 25% benchmark, however, "[s]uch an adjustment . . . must

25    be accompanied by a reasonable explanation of why the benchmark is

26    unreasonable under the circumstances." *Id.* at 273.

27    More recently, in *Vizcaino*, the Ninth Circuit expressed the view that

28    district courts should not apply the 25% benchmark in the abstract -- that is,

(Left margin: ARIAS OZZELLO & GIGNAC LLP)

1    without reference to the relevant circumstances of the particular case. Rather,

2    the district courts should look at several factors in order to determine if the

3    percentage requested is appropriate. The following factors were identified by

4    the Ninth Circuit in *Vizcaino*: (1) the results achieved for the class; (2) the

5    risks faced by class counsel; (3) whether class counsel's performance

6    generated benefits beyond the creation of a cash settlement fund; (4) how the

7    percentage compared to market rates and/or the rates set forth in counsel's

8    retainer agreements with the class representatives; and (5) the length of the

9    litigation and whether class counsel undertook the action on a contingency

10   basis and were required by the litigation to forego other work. *Vizcaino*, 290

11   F.3d at 1048-1050.

12       The fees sought by Plaintiffs' counsel in this case are $884,000. The

13   total amount to be paid by Defendants under the settlement agreement is

14   $3,600,000. Thus, the amount Plaintiffs' counsel is requesting is

15   approximately 24.6% of the total settlement fund. This is less than the federal

16   benchmark in a case where the fees sought by Plaintiffs' counsel (1) were

17   negotiated separately from the class recovery, (2) are a reduction from the

18   amount of fees actually incurred, and (3) do not reduce the recovery by the

19   class in the least.

20       Applying the factors identified by the Ninth Circuit in *Vizcaino*, the

21   class recovery under the settlement is approximately 60% of the maximum

22   amount recoverable at trial under the best possible scenario for the class, it is

23   clear that the percentage figure sought in this case – 24.6 percent – is most

24   reasonable.

25       As articulated above, the result obtained for the class is excellent in light

26   of the maximum estimated damages. Moreover, the risks faced by Class

27   Counsel in this action were significant. Risk is certainly a factor which must be

28   considered. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)

ARIAS OZZELLO & GIGNAC LLP

ARIAS OZZELLO & GIGNAC LLP

1 (finding attorneys' fees to be justified "because of the complexity of the issues

2 and the risks"). Further, the retainer agreements between Class Counsel and

3 the class representatives in this action specify a contingency fee rate of 35

4 percent, approximately 10 percent greater than the percentage requested by

5 Plaintiffs' counsel in this Application. Arias Decl., ¶ 5. Finally, Class

6 Counsel undertook the risk of handling this action on a fully contingent basis.

7 Class Counsel have expended significant time on this matter without any

8 compensation and have advanced the costs necessary to pursue this action to

9 its successful conclusion. Plainly, in the absence of their commitment to this

10 case, Class Counsel could have devoted their efforts to one or more other class

11 action matters.

12    For the foregoing reasons, Plaintiffs' counsel respectfully request that

13 this Court approve the instant fee application and award fees in the amount of

14 $884,000.

15 **D.    The Reasonable And Necessary Costs Incurred By Class Counsel Should**

16 **Be Reimbursed**

17    Attorneys in class actions may be reimbursed out of the common fund

18 for reasonable out-of-pocket expenses incurred in connection with the

19 litigation. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

20 "Fees *and costs* are awarded to an attorney for his efforts in creating . . . a fund

21 . . . for the benefit of the class whom he represents." *In re Nucorp Energy,*

22 *Inc.*, 764 F.2d 655, 661 (9th Cir. 1985) (Emphasis is added.) Absent the

23 payment of fees and costs out of the fund itself, those who have benefited from

24 the attorneys' representation "would unfairly enjoy the benefit without having

25 shared the costs of acquiring the benefit." *Id.* To avoid such unfairness, the

26 costs incurred in creating the common fund should be shared by the entire

27 class that has benefited. *Id.*

28    In class actions, courts in this circuit have awarded litigation costs and

Page 14

expenses in addition to a percentage-of-the-fund award of attorneys' fees. *See,
e.g.,* *In re Businessland Securities Litigation,* 1991 W.L. 427887, *2-3 (N.D.
Cal. 1991) (granting fee award of 30% of settlement fund plus expenses of
$90,574.78, citing several cases from this and other circuits that held
similarly). As the Ninth Circuit recognized in *Powers v. Eichen,* 229 F.3d
1249, 1258 (9th Cir. 2000), "the choice of whether to base an attorneys' fee
award on either net or gross recovery should not make a difference so long as
the end result is reasonable."

In this case, Plaintiffs' counsel has advanced more than $616,000 in
costs and expenses. Arias Decl. ¶¶ 13-15.     These costs are reasonable under
the circumstances considering: (1) the cost of notice and notice administration
pursuant to this Court's conditional certification order, (2) the duration of the
litigation – more than two years, (3) the fact that counsel was required to
prepare for and attend depositions across the State of California, (4) the
complexity of the litigation and the fact that it required retention of multiple
experts on issues of liability and damages, (5) the complicated organization
necessary to manage more than 5,000 plaintiffs, and (6) the fact that the case
required multiple mediation sessions in San Francisco before an established
and experienced mediator.

For these reasons, coupled with the fact that Plaintiffs' counsel's costs
were negotiated separately and do not reduce the class recovery in this case,
Plaintiffs' counsel respectfully requests that this Court grant the instant
application for costs in the amount of $616,000.

## E.     The Incentive Awards Requested Are Reasonable And Should Be Awarded To The Named Plaintiffs

In fulfilling their duties as class representatives in this action, both the
Class Representatives devoted significant amounts of their personal time to:
preparing for their depositions; reviewing the transcripts of their depositions

ARIAS OZZELLO & GIGNAC LLP

1    for accuracy; responding to, reviewing and revising their responses to multiple

2    sets of written discovery requests; collecting documents for production;

3    reviewing documents provided to them by Class Counsel; working with Class

4    Counsel to present this case to the Court; and reviewing and approving

5    pleadings, motions and the settlement agreement.  Stevens Decl., ¶ 3-10;

6    Cortez Decl., ¶ 3.

7        In light of the services which they rendered in this action, granting

8    incentive awards to the Class Representatives is justified for several reasons.

9    First, the Class Representatives should be recognized for having taken the

10   initiative to contact counsel and to retain Class Counsel's services for purposes

11   of filing and pursuing this action on behalf of the other members of the Class.

12   Second, the Class Representatives each devoted substantial time and effort in

13   order to ensure the prosecution of this lawsuit to a successful conclusion.

14   Third, incentive awards promote the public policy of encouraging individuals

15   with a small financial interest in the outcome of litigation to nonetheless step

16   forward and assume a "vanguard" role by litigating their individual claims for

17   the benefit of all other members of a class.  Fourth, both the superior courts in

18   this state and the federal district courts across the country routinely grant

19   incentive awards in class actions.

20       1.    **The Court Has The Discretion To Grant Incentive Awards In This**

21             **Action**

22       The trial court has discretion to grant incentive awards to the class

23   representatives.  *Mego Fin'l Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 463 (9th

24   Cir. 2000).  The criteria that courts have considered when determining whether

25   to make an incentive award and the amount of the award include: (1) the risk

26   to the class representative in commencing a class action, both financial and

27   otherwise; (2) the notoriety and personal difficulties encountered by the class

28   representative; (3) the amount of time and effort spent by the class

Page 16

ARIAS OZZELLO & GIGNAC LLP

1  representative; (4) the duration of the litigation; and (5) the personal benefit, or

2  lack thereof, enjoyed by the class representative as a result of the litigation.

3  *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D.Cal.1995).

4  The Ninth Circuit confirmed the propriety of incentive awards in *Staton*

5  *v. Boeing* (9th Cir. 2003) 327 F.3d 938.  In *Staton*, an employment

6  discrimination lawsuit brought by a class of approximately 15,000 African-

7  American employees of the Boeing Company, the Ninth Circuit acknowledged

8  that incentive awards properly may be awarded in class actions.  *Id.* at 976-

9  977.  The Ninth Circuit described the following factors to be considered in

10 granting incentive awards:

> The district court must evaluate their awards individually,
> using "relevant factors includ[ing] the actions the plaintiff
> has taken to protect the interests of the class, the degree
> to which the class has benefited from those actions, ... the
> amount of time and effort the plaintiff expended in pursuing
> the litigation ... and reasonabl[e] fear[s of] workplace
> retaliation."

18 *Id.* at 977, quoting *Cook v. Niedert* (7th Cir. 1998)142 F.3d 1004, 1016.

19 **2.  The Class Representatives Should Be Granted Incentive**

20 **    Awards By This Court**

21 Applying the criteria set forth in *Van Vraken* and *Staten*, leads to the

22 conclusion that the awards requested are reasonable under the circumstances.

23 First, as with any plaintiffs who file a civil action, the Class

24 Representatives undertook the financial risk that, in the event of a judgment in

25 favor of the Defendants in this action, the Class Representatives could have

26 been saddled with the costs awarded in favor of the Defendants.  The Class

27 Representatives also undertook the risk that cross-claims could be asserted

28 against them – creating the potential for personal exposure on their part.

ARIAS OZZELLO & GIGNAC LLP

Page 17

1    Further, the risk the class representative plaintiffs took in suing their employer

2    or former employer should not be overlooked as taking such an action may

3    affect Plaintiffs' future employment prospects.

4          Second, the Class Representatives were required to devote substantial

5    time and effort in order to assist in the prosecution of this litigation on behalf

6    of the Class. The Class Representatives performed the following tasks, among

7    others: (1) stepped forward and offered to intervene in this action  and to serve

8    as class representatives after the original class representatives were

9    disqualified from continuing to serve in such a capacity; (2) prepared for and

10   sat for a deposition on class certification issues; (3) responded to written

11   discovery requests; (4) gathered and produced documents for use in connection

12   with the case; (5) prepared for and sat for a second deposition devoted to

13   merits issues; (6) reviewed the transcripts of their depositions for any

14   inaccuracies; (7) prepared declarations in support of one or more motions filed

15   in this matter; (8) regularly reviewed pleadings, correspondence and other

16   documentation received from Class Counsel in order to keep themselves

17   apprised of the progress of the litigation; (9)  worked with Class Counsel to

18   present this case to the Court; and (10) reviewed and approved pleadings,

19   motions and the settlement agreement. Stevens Decl., ¶ 3-10; Cortez Decl., ¶ 3.

20         The time devoted by each of the Class Representatives to fulfilling their

21   obligations was very substantial. In addition to preparing for and attending

22   two sessions of deposition, Mr. Stevens expended approximately 5 hours per

23   week of his time pursuing this case. Stevens Decl., ¶ 3. Specifically, Mr.

24   Stevens was actively involved with store-level employees in his attempt to

25   obtain the most favorable result for the class. *See* Stevens Decl., ¶¶ 3-10.  In

26   addition, Mr. Stevens' knowledge of Defendants and Defendants' budgeting

27   and management were invaluable in prosecuting the case.

28         Third, the class representative plaintiffs have been required to participate

ARIAS OZZELLO & GIGNAC LLP

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS

1    in this litigation for a substantial amount of time – more than two years.

2    Finally, both Mr. Stevens and Mr. Cortez are not requesting incentive

3    awards merely to compensate them for their time, risk, and trouble in bringing

4    this case. Rather, the incentive awards are also in consideration for

5    surrendering their meal and rest claims under California law. For James

6    Stevens, this amounts to almost $18,000 and for Herman Cortez this totals just

7    over $14,000. Thus, the named Plaintiffs' requests for $20,000 (Stevens) and

8    $10,000 (Cortez) are reasonable in light of (1) the risk and stigma associated

9    with bringing this lawsuit, (2) the time and effort expended as the

10    representative plaintiffs in this action, (3) their direct participation in the

11    litigation, and (4) the surrender of their state law meal and rest break claims

12    which, in the case of Herman Cortez amounts to more than the amount he is

13    receiving as an incentive award, and in the case of James Stevens amounts to

14    approximately 90 percent of the amount of his incentive award.

### 3.    The Federal District Courts Routinely Grant Incentive Awards

17    Federal district courts routinely grant incentive awards to compensate

18    class representatives, named plaintiffs, and even non-representative class

19    members for services provided on behalf of the class and for the risks incurred

20    in involving themselves in class action litigation. *See Ingram v. The Coca-Cola*

21    *Co.* (N.D. Ga. 2001) 200 F.R.D. 685, 694. In *Ingram*, the district court awarded

22    incentive payments of $300,000 to each named plaintiff[2] in recognition of the

23    services which they provided to the class by responding to discovery requests,

24    participating in the mediation process, and taking the risk of stepping forward

25    on behalf of the class. The Class Representatives in this action undertook the

26    same risk by stepping forward and commencing this litigation, and the Class

27  _____

[2] In *Ingram*, the court also awarded $300 to each class member who executed an affidavit.

28

ARIAS OZZELLO & GIGNAC LLP

1  Representatives faithfully discharged their duties as class representatives

2  throughout the course of this litigation.

3      In similar situations, federal district courts have recognized such efforts

4  by class representatives and non-class representative named plaintiffs on behalf

5  of the class by granting incentive awards to them. *See, e.g.*, *Williams v. Kaiser*

6  *Sand and Gravel Co.* (N.D. Cal. 1995) 1995 US Dist. LEXIS 14262 (approving

7  an additional payment to a class representative "as compensation for its time

8  and effort expended in the case"); *Hughes v. Microsoft Corp.* (W.D. Wash.

9  2001) 2001 US Dist. LEXIS 5976 (approving differing incentive payments

10  based on duration of involvement and level of risk to class representatives);

11  *Gaskill v. Boula* (E.D. Ill. 1995) 1995 US Dist. LEXIS 18576 ("these

12  individuals [class representatives] invested their time and effort and exposed

13  themselves to litigation costs even though they might lose. Equity requires that

14  they receive greater compensation than others who did not."); *In Re Dun &*

15  *Bradstreet Credit Services Customer Litigation* (S.D. Ohio 1990) 130 F.R.D.

16  366, 376 (granting incentive awards to class representatives to compensate them

17  for "time, risk and expenses"); *Huguley v. General Motors Corp.* (E.D. Mich.

18  1989) 128 F.R.D. 81, 85, aff'd (6th Cir. 1991) 925 F.2d 1464 (approving

19  incentive payments to eighty-eight witnesses and named plaintiffs, stating:

20  "Named plaintiffs and witnesses are entitled to more consideration than class

21  members generally because of the onerous burden of litigation that they have

22  borne").

23      **4.    Incentive Awards Promote An Important Public Policy**

24      Granting incentive awards to those who serve as class representatives

25  and/or individual class members who make a meaningful contribution to the

26  case promotes the public policy goal of encouraging individuals with a small

27  financial interest in the outcome of the litigation to step forward and assume a

28  vanguard role in litigating their individual claims for the benefit of all other

Page 20

1    members of a class.  Such incentive awards also properly acknowledge the

2    discovery obligations and other burdens which such individuals bear during the

3    litigation of the case.

4         Accordingly, fairness dictates that the individuals responsible for

5    commencing this class action and pursuing the case to a successful conclusion

6    be the recipients of some measure of compensation.  The incentive awards

7    requested ensure just such an equitable result.

8         **5.    The Incentive Awards Requested Are In Line With Those**

9              **Granted In Other Cases**

10        Although the amounts of the incentive awards granted by courts vary, it is

11   not uncommon for a court to award each class representative several thousand

12   dollars as an incentive award.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.* (9th

13   Cir. 2000) 213 F.3d 454, 463 (approving incentive awards of $5000 to the two

14   class representatives of 5,400 class members in a class action settled for $1.725

15   million); *Van Vranken*, 901 F. Supp. at 300 (approving incentive award to single

16   class representative in the amount of $50,000); *Williams*, 1995 U.S. Dist LEXIS

17   14262 (approving incentive award to plaintiff in the amount of $10,000); *In re*

18   *SmithKline Beckman Corp. Sec. Litig.* (E.D. Pa. 1990) 751 F.Supp. 525, 535

19   (approving $5000 incentive awards for one representative of each of nine

20   plaintiff classes as part of class action settlement); *In re Domestic Air Transp.*

21   *Antitrust Litigation* (N.D. Ga. 1993) 148 F.R.D. 297, 357-358 (approving

22   incentive awards to class representatives in aggregate amount of $142,000); *In*

23   *re Dun & Bradstreet*, 130 F.R.D. at 373-374 (approving incentive awards to

24   class representatives in aggregate amount of $215,000); *In re Employee Benefit*

25   *Plan Sec. Litig.* (D. Minn.1993) 1993 U.S. LEXIS 21226, Fed. Sec. L. Rep.

26   (CCH) ¶ 97699 (approving incentive awards to each class representative in the

27   amount of $5000); *Whitford v. First Nationwide Bank* (W.D. Ky. 1992) 147

28   F.R.D. 135, 138 (approving the payment of $5,000 to each plaintiff as part of

ARIAS OZZELLO & GIGNAC LLP

class settlement); *Enterprise Energy v. Columbia Gas Transmission* (S.D. Ohio 1991) 137 F.R.D. 240, 250-51 (approving $50,000 in incentive payments to each of six class representatives)

### IV.

## CONCLUSION

For all of the foregoing reasons, and on the basis of the authorities cited herein, Class Counsel respectfully request that this Court enter an order (1) awarding Class Counsel attorneys' fees and costs in the aggregate amount of $1,500,000, and (2) grating the incentive awards in the amount of $20,000 for James Stevens and $10,000 for Herman Cortez.

Respectfully submitted,

Dated:  January 30, 2008          ARIAS OZZELLO & GIGNAC LLP

By: _____
        MIKE ARIAS
        MIKAEL H. STAHLE
        H. SCOTT LEVIANT
        JASON E. BARSANTI
        Attorneys for Class Plaintiffs
        and Class Counsel

**ARIAS OZZELLO & GIGNAC LLP**

APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND FOR INCENTIVE AWARDS